91 P.3d 505

Madonna P. ARQUERO,
Plaintiff–Appellant,

v.

HILTON HAWAIIAN VILLAGE LLC, f.k.a. Hilton Hawaiian Joint Venture LLC, f.k.a. Hilton Hawaiian Village Joint Venture, a Hawai'i Limited Liability Company, Hilton Hotels Corporation, a Delaware Corporation, Defendants–Appellees,

and

German Rodas, John Does 1–5, Jane Does 1–5, Doe Corporations 1–5, Doe Entities 1–5, Doe Governmental Agencies 1–5, Defendants.

No. 24162.

Supreme Court of Hawai'i.

June 10, 2004.

Scot S. Brower, Honolulu, on the briefs, for plaintiff-appellant Madonna P. Arquero.

Robert S. Katz and Perry W. Confalone, Honolulu, (Torkildson, Katz, Fonseca, Jaffe, Moore & Hetherington), on the briefs, for defendants-appellees Hilton Hawaiian Village LLC, f.k.a. Hilton Hawaiian Joint Venture LLC, f.k.a. Hilton Hawaiian Village Joint Venture, a Hawai'i Limited Liability Compa-

ny, and Hilton Hotels Corporation, a Delaware Corporation.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Plaintiff-appellant Madonna P. Arquero appeals from the first circuit court's February 22, 2001 final judgment in favor of Hilton Hawaiian Village LLC and Hilton Hotels Corporation [hereinafter collectively, Hilton].[1] Based on the following, we vacate the circuit court's final judgment and remand for further proceedings.

## I. *BACKGROUND*

In March and April 1998, Madonna P. Arquero and German Rodas worked as waitstaff in Hilton's Rainbow Lanai Restaurant. On March 29, 1998, Assistant Manager Zaiton Short (Assistant Manager Short) passed by the restaurant's open kitchen doors and observed Rodas stand behind Arquero and squeeze her right buttock for approximately one second. [Hereinafter, the March 29, 1998 incident will be referred to as "Incident # 1."] Assistant Manager Short heard Arquero say "Stop it" and saw Arquero push Rodas's hand away. Assistant Manager Short told Arquero that she had seen what Rodas had done; Arquero asked Assistant Manager Short to tell Rodas not to do it again. Assistant Manager Short spoke with Rodas near the end of Rodas's shift; she stated in an affidavit that "[she] told Rodas that [she] had observed his offensive actions and that his conduct was clearly inappropriate and would not be tolerated. [She] warned him that if he engaged in that sort of behavior a second time, he would receive a

written warning. Rodas indicated to [her] that he understood." Assistant Manager Short also stated in her affidavit that, prior to Incident # 1, she had neither observed nor heard of any inappropriate conduct between Arquero and Rodas.[2]

On April 22, 1998, Assistant Manager Short again saw Rodas stand behind Arquero and squeeze her buttock for one to two seconds. [Hereinafter, the April 22, 1998 incident will be referred to as "Incident # 2."] Arquero turned and hit Rodas and called him " 'stupid, rude[.]' " Assistant Manager Short told Rodas that she had seen what he had done and that she would speak with him later. Later that day, Rodas was suspended pending investigation; he remained on suspension until he was terminated on May 7, 1998. Arquero went on disability leave on April 23, 1998 and returned to work at Hilton on July 11, 1999.

After Incident # 2, Assistant Manager Short had a discussion with Arquero. According to Arquero, Assistant Manager Short told Arquero the following: when she (Assistant Manager Short) spoke with Rodas on March 29, 1998 regarding Incident # 1, Rodas told her to hurry up, that he was going on break, that Assistant Manager Short was going to have to pay him overtime if she wanted to speak with him, and that Rodas did not take her seriously.

On October 28, 1998, Arquero filed a complaint against Hilton and Rodas.[3] The complaint sought relief on the following grounds: (1) sexual harassment in violation of HRS § 378–2 (Supp.1998);[4] (2) negligent supervision; (3) sexual assault and battery; (4) infliction of emotional distress; and (5) invasion of privacy. The complaint also sought

---

1. The Honorable Colleen K. Hirai presided over the motion for summary judgment, and the Honorable Dan T. Kochi issued the circuit court's final judgment.

2. Arquero contends that, prior to March 29, 1998, Rodas tried to grab her crotch while she was not looking. However, Hilton argues that it did not have notice of this incident, and Arquero does not dispute this lack of knowledge.

3. Rodas did not answer the complaint, and the clerk of the first circuit court declared Rodas in default on April 21, 1999.

4. HRS § 378–2 provides in relevant part:

 It shall be an unlawful discriminatory practice:
 (1) Because of ... sex ...:
 (A) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment[.]

punitive damages. Hilton moved for summary judgment on August 21, 2000; Hilton argued that it was entitled to summary judgment because (1) Incident # 1 was not severe or pervasive enough to constitute sexual harassment, and (2) even if Incident # 1 did constitute actionable sexual harassment, Hilton's response was reasonably calculated to end the harassment. Hilton therefore argued that Arquero's claims of negligent supervision, invasion of privacy, and intentional infliction of emotional distress failed as to Hilton. Hilton also argued that the negligent supervision claim was barred by the exclusivity of benefits provision of HRS § 386–5 (1993)[5] and that the sexual assault, battery, and infliction of emotion distress claims were barred because Rodas was acting outside the scope of his employment when he grabbed Arquero's buttock. In her memorandum in opposition to Hilton's motion for summary judgment, Arquero conceded that (1) the negligent supervision claim and the intentional and negligent infliction of emotional distress claims were barred by HRS § 386–5, and (2) the claims for invasion of privacy, and sexual assault and battery were not committed within the scope of Rodas's employment.

On October 31, 2000, the circuit court, the Honorable Colleen Hirai presiding, granted Hilton's motion for summary judgment. The circuit court granted the motion as to Arquero's claim for sexual harassment because, "[r]eviewing the totality of circumstances and evidence in the light most favorable to Plaintiff, genuine issues of material fact have not been presented to demonstrate that the initial touching incident was sufficiently severe to constitute sexual harassment." The circuit court ruled that Arquero's claim for negligent supervision was barred by HRS § 386–5 and that Arquero's claim for sexual assault and battery was barred because the

assault and battery was outside the scope of Rodas's employment. The circuit court further concluded that Arquero's claims for negligent and intentional infliction of emotional distress and invasion of privacy failed based on the grant of summary judgment on Arquero's sexual harassment and sexual assault claims; similarly, the circuit court determined that Arquero's request for punitive damages failed based on the dismissal of the other claims against Hilton. The circuit court entered final judgment in favor of Hilton on February 22, 2001.

Arquero appealed to this court on March 21, 2001. On appeal, Arquero argues that the circuit court erred by concluding that Incident # 1 was not sufficiently severe so as to constitute actionable sexual harassment. In her reply brief, Arquero also argues that Hilton's actions in response to Incident # 1 were not reasonably calculated to end the harassment.[6]

## II. STANDARD OF REVIEW

We review the circuit court's grant or denial of summary judgment *de novo*. *Hawaii [sic] Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be

---

**5.** HRS § 386–5 provides:

**Exclusiveness of right to compensation; exception.** The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account

of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

**6.** Arquero did not raise this issue in her opening brief. However, Hilton raised this issue in its answering brief and Arquero responded in her reply brief.

viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Coon v. City and County of Honolulu,* 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002) (alteration in original).

## III. *DISCUSSION*

### A. *Elements Of A Claim For Sexual Harassment Pursuant To HRS § 378–2.*

■ This court recently clarified the elements of a hostile environment sexual harassment (HESH) claim pursuant to HRS § 378–2:

> [I]n order to establish a HESH claim, the claimant must show that: (1) he or she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct or visual forms of harassment of a sexual nature; (2) the conduct was unwelcome; (3) the conduct was *severe or pervasive;* (4) the conduct had the *purpose or effect* of either: (a) *unreasonably interfering with the claimant's work performance,* or (b) *creating an intimidating, hostile, or offensive work environment;* (5) the claimant actually perceived the conduct as having such purpose or effect; and (6) the claimant's perception was objectively rea-

sonable to a person of the claimant's gender in the same position as the claimant.

In addition, with regard to the third element of the claim, we observe that the required showing of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct. For example, a single severe act can be enough to establish a claim, and multiple incidents, each of which may not be severe when considered individually, can be enough to establish a claim when evaluated collectively.

Moreover, we emphasize that, to establish the last two elements of a HESH claim, it is not necessary for the claimant to prove that he or she has suffered tangible physical or psychological harm: the claimant's *perception* is the harm as long as the perception is objectively reasonable. *See Harris [v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ]. Finally, we emphasize that, in evaluating a HESH claim for purposes of dismissal, summary judgment or judgment as a matter of law, or in instructing juries, courts must "look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." *Steinberg [v. Hoshijo ],* 88 Hawai'i 10,] 18, 960 P.2d [1218,] 1226 [ (1998) ] (citing HAR [Hawai'i Administrative Rules] § 12–46–109(b) [7]).

---

7. HAR § 12–46–109 (1990), entitled "Sexual harassment," provides in relevant part:

(a) Harassment on the basis of sex is a violation of chapter 378, HRS. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or visual forms of harassment of a sexual nature constitute sexual harassment when:

(1) Submission to that conduct is made either explicitly or implicitly a term or condition of an individual's employment; or

(2) Submission to or rejection of that conduct by an individual is used as the basis for employment decisions affecting that individual; or

(3) That conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

(b) In determining whether alleged conduct constitutes sexual harassment, the commission will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred. The determination of the legality of a particular action will be made from the facts, on a case by case basis.

(c) An employer shall be responsible for its acts and those of its agents and supervisory employees with respect to sexual harassment regardless of whether the specific acts complained of were authorized or even forbidden, and regardless of whether the employer or other covered entity knew or should have known of their occurrence. The commission will examine the circumstances of the particular employment relationship and the job functions performed by the individual in determining whether an individual acted in either a supervisory or agency capacity.

(d) With respect to conduct between employees, an employer shall be responsible for acts of sexual harassment in the workplace where the employer or its agents or supervisory employees

*Nelson v. Univ. of Hawai'i*, 97 Hawai'i 376, 390–91, 38 P.3d 95, 109–110 (2001) (footnote omitted).[8]

The *Nelson* test, if satisfied, establishes the existence of actionable sexual harassment. Once the plaintiff proves that she or he has been the victim of actionable sexual harassment, however, an employer can still avoid liability by demonstrating that it took "immediate and appropriate corrective action" that was "reasonably calculated to prevent future harassment."[9] HAR § 12–46–109(d); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir.2004) ("An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." (Quoting *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir.2001).) (Block quote formatting omitted.)). *See also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1120 (9th Cir.2004) ("[The employer] may nonetheless avoid liability for such harassment by undertaking remedial measures 'reasonably calculated to end the harassment.'" (Quoting *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir.1991).)); *E.E.O.C. v. Harbert–Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir.2001) ("For an employer to be liable for the sexual harassment of an employee by a coworker, the harassed employee must show that the employer both (1) knew or should have known of the harassment and (2) failed to take prompt and appropriate corrective action.").

Arquero argues that Hilton is liable for co-worker sexual harassment for Incident # 2 because its actions subsequent to Incident # 1 were not reasonably calculated to end Rodas's harassing conduct (*i.e.*, Hilton did not take steps reasonably calculated to prevent Incident # 2). Specifically, Arquero contends that there is a genuine issue of material fact as to whether Hilton took appropriate corrective action because of Arquero's claim that Rodas did not take Assistant Manager Short's oral warning seriously. Hilton, on the other hand, argues that Incident # 1 was not sufficiently severe so as to constitute actionable sexual harassment, such that the reasonableness of its response is irrelevant. Hilton also argues that, even if Incident # 1 was actionable sexual harassment, its response was reasonably calculated to end Rodas's harassing behavior.

Based on the following, we hold that Incident # 1 was sufficiently "severe" under the *Nelson* test to constitute actionable sexual harassment. Furthermore, there is a genuine issue of material fact as to whether Hilton's response was reasonably calculated to end the harassment.

### B. *Incident # 1 Was "Severe."*

#### 1. Weight of federal precedent

In interpreting HRS § 378–2, we have held that federal courts' interpretations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 (2004), are persua-

---

knows or should have known of the conduct and fails to take immediate and appropriate corrective action. An employee who has been sexually harassed on the job by a co-worker should inform the employer, its agent, or supervisory employee of the harassment; however, an employee's failure to give such notice may not be an affirmative defense.

 ....

(g) Prevention is the best tool for the elimination of sexual harassment. Employers should affirmatively raise the subject, express strong disapproval, develop appropriate sanctions, inform employees of their right to raise and how to raise the issue of sexual harassment, and take any other steps necessary to prevent sexual harassment from occurring.

8. *Nelson* was decided after the circuit court granted summary judgment in the instant case.

9. The plaintiff has the burden of proving the absence of "immediate and appropriate corrective action." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 616 (5th Cir.1999) ("The plaintiff bears the burden of showing that his employer failed to take effective action."); *Mockler v. Multnomah County*, 140 F.3d 808, 812 (9th Cir.1998) (" '[T]he *plaintiff* must show that the employer knew or should have known of the harassment, and took no effectual action to correct the situation. This showing can ... be rebutted by the employer directly, or by pointing to prompt remedial action reasonably calculated to end the harassment.'" (Quoting *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir.1983).) (Second alteration in original.)).

sive, but not controlling. *See Shoppe v. Gucci America, Inc.,* 94 Hawai'i 368, 377, 14 P.3d 1049, 1058 (2000) ("In interpreting HRS § 378–2 in the context of race and gender discrimination, we have previously looked to the interpretations of analogous federal laws by the federal courts for guidance."); *Furukawa v. Honolulu Zoological Soc.,* 85 Hawai'i 7, 13, 936 P.2d 643, 649 (1997) ("Of course, a federal court's interpretation of Title VII is not binding on this court's interpretation of civil rights laws adopted by the Hawai'i legislature.").

## 2. Federal courts' interpretations of the "severe and pervasive" requirement

In *Clark County School Dist. v. Breeden,* 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), the United States Supreme Court stated that "sexual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." (Citations and internal quotation signals omitted.) (Alteration in original.) *See also Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (" 'When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.' " (Quoting *Harris v. Forklift Sys.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).)).

▮ Using this standard, federal courts look at the severity of the conduct in conjunction with its effect on the victim's employment. For example, in *Brooks v. City of San Mateo,* 229 F.3d 917 (9th Cir.2000),[10] a female employee was sexually assaulted by a male co-worker who forced his hand underneath the female employee's sweater and bra and fondled her bare breast. *Id.* at 921. The next day, the employer put the harassing co-worker on administrative leave. *Id.* at 921–22. The harassing co-worker resigned

after the employer began proceedings to terminate his employment. *Id.* at 922. The Ninth Circuit concluded that this single incident of sexual assault did not constitute actionable sexual harassment:

> Because only the employer can change the terms and conditions of employment, an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship. By hypothesis, the employer will have had no advance notice and therefore cannot have sanctioned the harassment beforehand. And, if the employer takes appropriate corrective action, it will not have ratified the conduct. In such circumstances, it becomes difficult to say that a reasonable victim would feel that the terms and conditions of her employment have changed as a result of the misconduct.

> Which is why [the co-worker's] conduct, while relevant, is not the primary focus of our inquiry. No one could reasonably dispute that what [the co-worker] did was egregious; he was, after all, immediately removed from his job and prosecuted. He spent time in jail. But it is the [employer], and not [the co-worker], who is the defendant here. To hold her employer liable for sexual harassment under Title VII, [the victim] must show that she reasonably feared she would be subject to such misconduct in the future because the city encouraged or tolerated [the co-worker's] harassment.

*Id.* at 924 (footnote omitted). Thus, the federal courts look at the effect the harassing conduct has on the victim's employment, rather than conducting separate inquiries into the severity of the conduct and the effect of that conduct on the employee's workplace. *See id.* at 926 ("Utilizing the *Harris* factors of frequency, severity and intensity of interference with working conditions, we cannot say that a reasonable woman in [the employee's] position would consider the terms and conditions of her employment altered by [the

---

10. Both parties cite to *Brooks* at 214 F.3d 1082 (9th Cir.2000). However, the opinion published at 214 F.3d 1082 was withdrawn and superseded by the opinion published at 229 F.3d 917 (9th Cir.2000). *Brooks,* 229 F.3d at 921.

co-worker's] actions. [The employee] was harassed on a single occasion for a matter of minutes in a way that did not impair her ability to do her job in the long-term[.]" (Footnote omitted.)). *See also Oncale,* 523 U.S. at 81, 118 S.Ct. 998 ("The prohibition of harassment on the basis of sex ... forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment. 'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.'" (Quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367.)); *Meriwether v. Caraustar Packaging Co.,* 326 F.3d 990, 993 (8th Cir.2003) (holding that a single incident in which a co-worker squeezed an employee's buttocks was not sufficiently severe or pervasive so as to "alter the conditions of [the victim's] employment and create an abusive working environment").

### 3. Distinction between federal standard and Hawai'i standard

 This court also requires conduct to be "severe and pervasive" to constitute actionable sexual harassment. *See Nelson v. Univ. of Hawai'i,* 97 Hawai'i 376, 390, 38 P.3d 95, 109 (2001). However, in contrast to federal courts, this court's analysis of whether particular harassing conduct was "severe and pervasive" is separate and distinct from the remaining requirements of a plaintiff's claim: "it is the *harasser's conduct* which must be severe or pervasive, 'not its effect on the plaintiff or on the work environment.'" *Id.* (quoting *Hurley v. Atlantic City Police Dept.,* 174 F.3d 95, 115 (3d Cir.1999)). A finding that specific conduct was "severe or pervasive" does not require a finding that "the conduct had the purpose or effect of either: (a) unreasonably interfering with the claimant's work performance, or (b) creating an intimidating, hostile, or offensive work

environment[.]" *Nelson* at 390, 38 P.3d at 109 (emphases omitted from original).

 Therefore, according to *Nelson,* we separate the severity and pervasiveness of the conduct from the effect that conduct had on the employee's work environment. As such, the relevant inquiry is not whether the conduct was so severe or pervasive as to create an abusive work environment, but rather is whether (1) the conduct was severe or pervasive [11] *and* (2) the conduct had the purpose or effect of affecting the claimant's employment (in the manner described *supra*). The circuit court found only that "genuine issues of material fact have not been presented to demonstrate that the initial touching incident was sufficiently severe to constitute sexual harassment." Thus, the circuit court appeared to rest its conclusion on the severity of the conduct, rather than on the effect the conduct had on Arquero's work environment or work performance. In so concluding, the circuit court utilized an unduly restrictive view of the phrase "severe or pervasive." *See Nelson,* 97 Hawai'i at 390, 38 P.3d at 109 ("Essentially, the 'severe or pervasive' requirement reflects a general concern that an employer not be held liable for trivial conduct." (Citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).)).

### 4. Application to the instant case

 Incident # 1, in which Rodas grabbed Arquero's buttock, was "severe." Rodas's alleged conduct appears to constitute sexual assault in the fourth degree, in violation of HRS § 707–733(1)(a) (1993).[12] The conduct at issue may not have "had the purpose or effect of either: (a) unreasonably interfering with [Arquero's] work performance, or (b) creating an intimidating, hostile, or offensive work environment." *Nelson,* 97 Hawai'i at 390, 38 P.3d at 109 (emphases

---

11. As quoted *supra,* in clarifying the "severe or pervasive" requirement, this court stated in *Nelson* that "the required showing of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct. For example, a single severe act can be enough to establish a claim[.]" *Nelson,* 97 Hawai'i at 390, 38 P.3d at 109.

12. HRS § 707–733, entitled "Sexual assault in the fourth degree," provides in relevant part:

(1) A person commits the offense of sexual assault in the fourth degree if:

(a) The person knowingly subjects another person to sexual contact by compulsion or causes another person to have sexual contact with the actor by compulsion[.]

omitted from original). However, the issue is whether Rodas's *conduct* was severe; given that Rodas sexually assaulted Arquero (rather than engaging in name-calling or other verbal harassment[13]), this conduct satisfies the *Nelson* severity prong. This comports with a general distinction between name-calling and physical contact set forth in *Harris* and discussed by many federal courts in analyzing whether particular conduct is "severe and pervasive." *See, e.g., Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir.2001) ("There is no 'mathematically precise test' for determining whether the conduct is sufficiently severe or pervasive. [*Harris*, 510 U.S. at 22, 114 S.Ct. 367.] Some factors to be weighed include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' *Id.* at 23, 114 S.Ct. 367[.]"). Consequently, the circuit court erred in determining that Incident # 1 was not sufficiently severe to constitute actionable sexual harassment.

C. *Whether Hilton's Response Was Reasonably Calculated To End The Sexual Harassment Is A Question Of Fact.*

An employer will be held liable for co-worker sexual harassment only where the employer knew or should have known of that harassment and failed to take steps reasonably calculated to end the harassment. HAR § 12–46–109(d). In the instant case, Hilton argues that even if Incident # 1 constituted actionable sexual harassment, Hilton is nevertheless entitled to summary judgment in its favor because it took steps reasonably calculated to end the sexual harassment. Arquero, on the other hand, argues that there is a genuine issue of material fact as to the reasonableness of Hilton's response. Given the particular circumstances of this case, we agree with Arquero and hold that there are genuine issues of material fact as

to whether Hilton's response to Incident # 1 was reasonably calculated to end Rodas's harassment. Therefore, we reject Hilton's alternative argument for affirming the circuit court's grant of summary judgment.

As the Seventh Circuit Court of Appeals explained:

If an employer takes reasonable steps to discover and rectify the harassment of its employees … it has discharged its legal duty. An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made. We are not to focus solely upon whether the remedial activity ultimately succeeded, but instead should determine whether the employer's total response was reasonable under the circumstances as then existed.

*Wyninger,* 361 F.3d at 976 (citations omitted). *See also McGinest v. GTE Service Corp.,* 360 F.3d 1103, 1120 (9th Cir.2004) ("The reasonableness of the remedy depends on its ability to: (1) stop harassment by the person who engaged in the harassment; and (2) persuade potential harassers to refrain from unlawful conduct. To be adequate, an employer must intervene promptly. Remedial measures must include some form of disciplinary action which must be proportionate[ ] to the seriousness of the offense[.]" (Citations and internal quotation signals omitted.) (First alteration in original.)). Whether an employer's response is reasonably calculated to end the harassment depends on the circumstances of the particular case:

Here we add that what is reasonable depends on the gravity of the harassment. Just as in conventional tort law a potential injurer is required to take more care, other things being equal, to prevent catastrophic accidents than to prevent minor ones, *Gottshall v. Consolidated Rail Corp.,* 988 F.2d 355, 375 (3d Cir.1993); W. Page Kee-

---

13. However, we recognize that there are situations in which name-calling or other verbal harassment constitutes "severe or pervasive" harassment. *See, e.g., Rizzo v. Sheahan,* 266 F.3d 705, 712 (7th Cir.2001) (holding that a supervisor's repeated comments to an employee that the

supervisor wanted to have sex with the employee's fifteen-year-old daughter were "extremely severe" because the comments were "significantly more offensive than the typical crass comments we have found to be insufficient to constitute harassment in other cases").

ton et al.; Prosser and Keeton on the Law of Torts § 34, p. 208 (5th ed.1984), so an employer is required to take more care, other things being equal, to protect its female employees from serious sexual harassment than to protect them from trivial harassment. *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir.1991); *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309 (5th Cir.1987). *Had [the harassing employee] assaulted [the victim], due care might have required the company to fire him on the spot.*

*Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 432 (7th Cir.1995) (emphasis added). In some circumstances, when an employer first learns that an employee is harassing a co-worker, an oral warning (coupled with the threat of future disciplinary action should the harassing behavior continue) *may* be sufficient to satisfy the employer's obligation to take appropriate steps to end the harassing behavior. *See, e.g., Scarberry v. Exxonmobil Oil Corp.*, 328 F.3d 1255, 1259 (10th Cir.2003) ("[A]fter an investigation, [the harassing employee] was individually counseled regarding inappropriate behavior and company policy regarding harassment. He was also warned that [the employer] would not tolerate harassment in the workplace nor retaliation as a result of the investigation. This response was prompt and adequate as a matter of law."); *Intlekofer v. Turnage*, 973 F.2d 773, 779–80 (9th Cir.1992) (holding that an oral warning may be sufficient "where the harassing conduct is not extremely serious"). In other circumstances, harsher disciplinary action may be required.[14] *See Baskerville*, 50 F.3d at 432 ("Had [the harassing employee] assaulted [the victim], due care might have required the company to fire him on the spot.").

Generally, whether an employer's response to harassment was reasonably calculated to end the harassment is a question for the finder of fact. *See Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 465 (7th Cir.1990) ("The employer acts unreasonably either if it delays unduly or if the action it does take, however promptly, is not reasonably likely to prevent the misconduct from recurring. [The employer's] promptness in taking corrective action in this case is not in question, but only the effectiveness of the action it took. That is a question of fact[.]"); *see also Smith v. St. Louis Univ.*, 109 F.3d 1261, 1265 (8th Cir.1997) ("[A] genuine issue of fact exists as to whether the [employer] failed to take proper remedial action.... The [employer's] response was by no means immediate, and [the plaintiff] should have the opportunity to argue to a jury that the response was not prompt enough (given all the circumstances), and thus made it not "proper" for some reason[.]"); *Bernard v. Calhoon Meba Eng'g Sch.*, 309 F.Supp.2d 732, 740 (D.Md.2004) ("Summary judgment will be denied if reasonable minds could differ as to whether the [employer's] remedial action was reasonably calculated to end the harassment." (Citations and internal quotation signals omitted.) (Alteration in original.)). We recognize that there may be situations in which a court could conclude that an employer's response was sufficient as a matter of law because no reasonable factfinder could conclude that the employer's response was inadequate. *See, e.g., Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1288–89 (11th Cir.2003) (holding that no issue of material fact existed as to the reasonableness of an employer's response where the offending employee was promptly suspended and fired). However, if reasonable minds could differ as to whether the employer's response was reasonably calculated to end the harassing behavior, summary judgment is inappropriate. *See Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 107–08, 839 P.2d 10, 24 (1992) ("Inasmuch as the term 'reasonableness' is subject to differing interpretations ..., it is inherently ambiguous. Where ambiguity exists, summary judgment is usually inappropriate.... However, 'reasonableness' can constitute a question of law for the court 'when the facts are undisputed and not fairly susceptible of divergent inferences[.]'" (Quoting *Broad &*

---

14. We recognize that "[t]he courts ... must balance the victim's rights, the employer's rights, and the alleged harasser's rights. If our rule were to call for excessive discipline, employers would inevitably face claims from the other direction of violations of due process rights and wrongful termination." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 677 (10th Cir.1998).

*Branford Place Corp. v. J.J. Hockenjos Co.*, 132 N.J.L. 229, 39 A.2d 80, 82 (1944).)); *see also Potts v. BE & K Const. Co.*, 604 So.2d 398, 402 (Ala.1992) (reversing the trial court's grant of summary judgment because a jury could find either that the employer's response was or was not reasonably calculated to end the harassing behavior).

■ The circuit court did not reach the issue of whether Hilton's response was reasonably calculated to end the harassing conduct. Given the record before us, we are unable to conclude as a matter of law that Hilton's response was sufficient because reasonable minds could differ as to whether Hilton's response was reasonably calculated to end Rodas's harassment. Several factors point to Hilton's conduct satisfying the reasonableness standard: Hilton promptly informed Rodas that his conduct was "clearly inappropriate and would not be tolerated"; Assistant Manager Short warned Rodas that he would face a more severe sanction, namely a written warning, if he sexually harassed Arquero a second time; and Rodas indicated to Assistant Manager Short that he understood. However, several factors also point to the insufficiency of Hilton's response: Hilton continued to have Rodas and Arquero work at the same restaurant; Rodas was given only an oral warning and the threat of a future written reprimand and was not specifically informed that he could be suspended or terminated if his behavior continued (not-

withstanding that Hilton in fact terminated Rodas following Incident # 2); Assistant Manager Short told Arquero that Rodas did not take the oral warning seriously; and the harassment, in fact, continued.[15] Because a reasonable fact-finder could conclude either that Hilton's actions were sufficient or that Hilton's actions were not sufficient, affirming the circuit court's grant of summary judgment based on Hilton's response to Rodas's conduct would be inappropriate.

## IV. CONCLUSION

Based on the foregoing, we (1) reverse the circuit court's October 31, 2000 order granting Hilton's motion for summary judgment insofar as the order concluded that the March 29, 1998 touching incident was insufficiently severe to constitute sexual harassment, (2) vacate the circuit court's February 22, 2001 final judgment in favor of Hilton because there are genuine issues of material fact that make the granting of summary judgment inappropriate, and (3) remand this case to the circuit court for further proceedings.

---

15. Whether the harassing conduct continued is one factor in judging the reasonableness of the employer's response; however, this one factor is not dispositive. *See, e.g., Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir.2004) ("We are not to focus solely upon whether the remedial activity ultimately succeeded, but instead should determine whether the employer's total response was reasonable under the circumstances as then existed." (Quoting *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir.2001).)

(Block quote formatting omitted.)); *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 633 (8th Cir. 2000) (stating that relevant factors include "the amount of time elapsed between the notice of harassment ... and the remedial action, and the options available to the employer such as employee training sessions, disciplinary action taken against the harasser(s), reprimands in personnel files, and terminations, and whether or not the measures ended the harassment").