STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-14-123

MICHELLE GRUBB,

Plaintiff

v.

ORDER

MERCY HOSPITAL,

Defendant

STATE OF MAINE
Cumberland, ss. Clerk's Office

JUN 23 2015

RECEIVED

Before the court are two motions for summary judgment filed by defendant Mercy Hospital.

Mercy's first motion seeks summary judgment on counts I and II of plaintiff Michelle Grubb's first amended complaint, which involve claims of employment discrimination based on an allegedly hostile work environment and alleged retaliation during the spring and summer of 2013.

Mercy's second motion seeks summary judgment on certain additional allegations asserted in Grubb's second amended complaint – filed while Mercy's first motion for summary judgment was pending – which contend that Grubb was also retaliated against because she was not selected for an open surgical assistant position in December 2014.

Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for

summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil,* 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue,* 1997 ME 99 ¶ 8, 694 A.2d 924.

## Factual Record on Mercy's First Motion

At all relevant times plaintiff Michelle Grubb has been a per diem perioperative technician, also called a surgical assistant, at Mercy. As opposed to full time employees who are regularly scheduled to work 40 hours per week, per diem employees are not regularly scheduled but fill vacancies in the schedule as needed. They are not guaranteed any particular number of hours, and their scheduled hours generally fluctuate depending on business need. Defendant's Statement of Material Facts dated December 19, 2014 ("Mercy 12/19/14 SMF") ¶¶ 2, 10-12 (admitted).

On April 25, 2013 Grubb was slapped on the buttocks by Brian Halavonich, a full time Mercy employee who is the lead Certified Orthopedic Surgical Technician at Mercy. Grubb testified that in the course of the slap Halavonich's hand cupped her buttock. Plaintiff's Statement of Material Facts dated January 16, 2015 ("Plaintiff's 1/16/15 SMF") ¶¶ 4-5, 7.[1]

---

[1] For his part, Halavonich contends that he was attempting to give Grubb a "high five, low five" but missed and accidentally made contact with Grubb's buttock. Mercy 12/19/14 SMF ¶ 22.

2

Grubb was shocked and uncomfortable and reported the incident the following day to her supervisor, Susan Tardif. Plaintiff's 1/16/15 SMF ¶¶ 5-6, 14.

At that time she told Tardif that on one prior occasion Halavonich had given her a hug and kissed her on the cheek, which she had felt was getting "a little too close for me." Plaintiff's 1/16/15 SMF ¶ 17. Grubb testified, however, that on that occasion she had just thought that Halavonich was being friendly and that he was the type of person who hugs and kisses people "so that didn't really make me too uncomfortable. It made me a little uneasy." Grubb Dep. 23-24, cited in Mercy 12/19/14 SMF ¶ 20.

Tardif asked Grubb what she would like to see happen and Grubb said she would like an apology. Grubb Dep. 30, cited in Mercy 12/19/14 SMF ¶ 31. Mercy officials spoke to Halavonich that same day, and he admitted that he had slapped Grubb's buttock. Halavonich Dep. 19.

On April 29, 2013, Halavonich received a documented verbal warning which described his action as unsolicited and offensive to his co-worker and was considered to be harassment. Tardif Dep. Ex. 2, cited in Plaintiff's 1/16/15 SMF ¶¶ 26-27. Halavonich had never previously been the subject of a similar complaint at Mercy. Mercy 12/19/14 SMF ¶ 35.[2]

On April 30, 2013 Tardif convened a meeting between Grubb and Halavonich. Although the meeting was intended to allow Halavonich to apologize and clear the air, Halavonich was angry that he had been written up. Plaintiff's 1/16/15 SMF ¶¶ 38-39, 41. He told Grubb that he

---

[2] Although paragraph 35 in Mercy's 12/19/14 SMF was denied by Grubb, she has not offered any evidence to controvert that paragraph. Grubb contends that Halavonich had admitted he had engaged in "such behavior" with females seven or eight times previously. See Plaintiff's Opposition to Defendant's Statement of Material Facts dated January 16, 2015 ("Plaintiff's 1/16/14 Opp. SMF") ¶ 35. This is not supported by the record. Halavonich testified that he had exchanged "high five, low fives" with other employees seven or eight times. Halavonich Dep. 15-16. He did not testify that he had previously slapped anyone's buttocks or that he had ever been previously warned, admonished, or disciplined. Grubb offered no evidence that Halavonich had ever been the subject of prior complaints.

could not believe that she had reported him and would not talk to her again. Grubb Dep. 30, cited in Plaintiff's 1/16/15 SMF ¶ 42. Halavonich apologized for slapping Grubb and said he would not do it again. Grubb Dep. 32, cited in Mercy 12/19/14 SMF ¶ 43. Viewing the evidence in the light most favorable to plaintiff, however, Halavonich's apology was not sincere.

Mercy Hospital has two campuses in Portland, one on State Street and one on Fore River Parkway. Since 2008 almost all of Mercy's orthopedic surgical procedures have been performed at the Fore River campus. Mercy 12/19/14 SMF ¶¶ 13-14 (admitted). Because Halavonich was the lead orthopedic surgical technician, that meant that almost all of Halavonich's work was performed at the Fore River campus. Mercy 12/19/14 SMF ¶ 15. Halavonich could do other surgical work at the State Street campus but not the orthopedic surgical work for which he is the lead surgical technician. Halavonich Dep. 26, cited in plaintiff's qualification to ¶ 15 of Mercy's 12/19/14 SMF.

After the April 30, 2013 meeting Grubb testified that her co-workers were no longer talking to her, and she believed they were talking about her. Plaintiff's 1/16/15 SMF ¶¶ 49-51; Grubb Dep. 31 ("in the OR, no one talks to me anymore. I'm the bad guy"). She informed her supervisors that she did not want to work with Halavonich. Grubb Dep. 38-40, cited in Mercy 12/19/14 SMF ¶ 45.[3] Mercy scheduled Grubb to work solely at the State Street campus, where she would not be working with Halavonich, for the remainder of May 2013. Mercy 12/19/14 SMF ¶ 48; First Amended Complaint ¶ 10.

In June 2013, because there were fewer hours scheduled for per diem surgical assistants at the State Street campus, Mercy sought to schedule Grubb at the Fore River campus. Mercy

---

[3] Grubb testified, "I didn't want him to get fired. I just – I wanted just not to work with him." Grubb Dep. 38.

12/19/14 SMF ¶¶ 50-51.[4] Grubb declined to work at the Fore River Campus because she did not want to work with Halavonich. Mercy 12/19/14 SMF ¶ 52 (admitted). Mercy informed Grubb that her hours would be reduced, and Grubb stated that she would work only at State Street. Mercy 12/19/14 SMF ¶¶ 55-56, citing Grubb Dep. 49 ("because that was my only option, yes").

When she saw her June schedule, Grubb complained that she had not understood how much her schedule would be affected. Mercy 12/19/14 SMF 68 (admitted). Mercy, however, tried to give her hours at State Street. Mercy 12/19/14 SMF ¶¶ 63-65.[5] From January 2013 through April 27, 2013 (two days after the slapping incident with Halavonich) Grubb worked an average of 18.8 hours per week as a per diem perioperative technician at Mercy's two campuses. Mercy 12/19/14 SMF ¶ 87 (admitted). During the month of June 2013 Grubb's hours remained essentially the same. She worked an average of 18.6 hours per week as a per diem perioperative technician at the State Street campus. Mercy 12/19/14 SMF ¶ 88.[6]

On June 26, 2013 Halavonich was sent to the State Street campus to relieve staff because all the Fore Street cases were completed. Plaintiff's 1/16/15 SMF ¶ 84; Mercy 12/19/14 SMF ¶ 75 (admitted). Grubb observed Halavonich standing with a group of employees and everyone turned to look at Grubb, staring at her. Halavonich then walked down the hallway and pointed at

---

[4] Grubb denies these paragraphs in Mercy's SMF but only because she contends that Mercy could have scheduled her for more hours at State Street, citing to documents that are not in the summary judgment record. See Plaintiff's 1/16/14 Opp. SMF ¶¶ 50-51. See M.R.Civ.P. 56(h)(4) (facts not supported by record references shall be deemed admitted and court may disregard any statement of fact not supported by a specific citation to record material).

[5] See n. 6 below.

[6] Although Grubb denies paragraphs 63, 65, and 88 in Mercy's SMF, she does so based only on documents that are not contained in the summary judgment record and which cannot be evaluated by the court. The court cannot assume that a factual dispute for trial exists based on documents that are not before the court. See n.4 above. Grubb's denial of paragraph 88 is not supported by any sworn statements in her affidavit or deposition. In fact, she testified in her deposition that after the June schedule was adjusted, she was satisfied with it. Grubb Dep. 66.

5

Grubb. Grubb Dep. 39-40, cited in Plaintiff's 1/16/15 SMF ¶¶ 84-85. Grubb complained about this incident to a human resources administrator at Mercy. Grubb Dep. 39.

Since June 26, 2013 Grubb and Halavonich have not seen each other at work. Mercy 12/19/14 SMF ¶ 83 (admitted). Grubb has continued to work at the State Street campus and Halavonich has continued to work as the lead Certified Orthopedic Surgical Technician at the Fore River campus. Halavonich, as a full time employee, has worked 40 hours per week. Mercy 12/19/14 SMF ¶¶ 72, 85 (admitted). From June 8, 2013 to the end of December 2013 Grubb worked an average of 21.2 hours per week as a per diem perioperative technician. Mercy 12/19/14 SMF ¶ 89.[7]

Grubb continues to be unwilling to work at the Fore River campus if Halavonich is working there. Mercy 12/19/14 SMF ¶ 91 (admitted). At one point a human relations administrator at Mercy told Grubb that if she wanted to work at Fore River again, Mercy would insure that there were no further incidents of harassment. Grubb Dep. 69, cited in Mercy 12/19/14 SMF ¶ 71. Grubb, however, did not believe that Mercy would make her feel comfortable if she had to work with Halavonich, based in part on her perception of his behavior on the one occasion that Halavonich was at the State Street campus in June 2013. *Id.*

Hostile Work Environment Claim

Sexual harassment in the workplace can constitute employment discrimination in violation of the Maine Human Rights Act. A plaintiff must show:

---

[7] Once again, although Grubb has denied paragraph 89 of Mercy's SMF, she does so solely by referring to documents that are not part of the summary judgment record. See nn. 4 and 6 above. Those documents, moreover, purportedly relate only to the months of June and August. Plaintiff's 1/16/15 Opp. SMF ¶ 89. Notably, Grubb testified in her deposition that she thinks her hours were restored after June 2013 to what they were before April 2013. Grubb Dep. 79.

(1) that she (or he) is a member of a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Watt v. UniFirst Corp.*, 2009 ME 47 ¶ 22, 969 A.2d 897 (citations omitted). Mercy Hospital argues that Grubb has not generated a disputed issue for trial as to whether Grubb was subjected to "sufficiently severe or pervasive" sexual harassment, viewed objectively, "so as to alter the conditions of Grubb's employment and create an abusive work environment."

In this case Grubb's claim of a hostile work environment is almost entirely based on one incident in which a co-worker slapped her buttock. This was an isolated incident of sexual harassment. It occurred with other employees present, and Grubb was not in an isolated setting where she would have had reason to fear that the slap might lead to further unwanted sexual advances. Grubb was never the subject of any sexual propositions or comments. The slapping episode was preceded by a hug and kiss on one occasion "that didn't really make me too uncomfortable." Grubb Dep. 23-24. It was followed by Halavonich's display of anger at being reported and the incident where he pointed at her when he came to the State Street campus in late June. On neither of the latter occasions, however, were there any sexual comments or any behavior that was sexual in nature. There was no further touching of any kind.

Factors to be reviewed in considering whether an actionable claim for a hostile work environment exists include "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Doyle v. Department of Human Services,* 2003 ME 61 ¶ 23, 824 A.2d 48. *Accord, Harris v. Forklift Systems Inc.,* 510 U.S. 17, 23 (1993). A single

7

incident of sexual harassment may create a hostile working environment if "a reasonable person could find [the] conduct to be sufficiently severe to alter the conditions of employment and to create an abusive or hostile work environment." *Nadeau v. Rainbow Rugs*, 675 A.2d 973, 976 (Me. 1996). However, isolated incidents must be "extreme" or "egregious" to amount to a change in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Ponte v. Steelcase Inc.*, 741 F.3d 310, 320 (1st Cir 2014):

> [S]imple teasing, offhand comments, and isolated incidents (<u>unless extremely serious</u>) will not amount to discriminatory changes in the "terms and conditions of employment."

*Faragher*, 524 U.S. at 788 (emphasis added).

Measured by this standard, Grubb's claim of hostile work environment falls short. Taking the evidence in the light most favorable to Grubb, she was personally very offended when her buttock was slapped. However, whether harassment was sufficiently severe or pervasive to create a hostile work environment is determined according to an objective standard, not based on the feelings of the individual employee involved. *E.g., Oncale v. Sundowner Offshore Services*, 523 U.S. 75, 81 (1998). In cases where it cannot be objectively found that the conduct of co-workers was sufficiently severe or pervasive to create a hostile work environment, summary judgment is appropriate. *E.g., Ponte v. Steelcase Inc.*, 741 F.3d at 321; *Doyle v. Department of Human Services*, 2003 ME 61 ¶¶ 24-25.

Three other points should be made in this connection. First, although Grubb found the entire situation to be extremely uncomfortable, "discomfort is not the test." *Ponte v. Steelcase Inc.*, 741 F.3d at 320. Second, although Grubb also complains about the attitude of her co-workers after the slap incident and their failure to talk to her, none of the co-workers are alleged to have made any sexual comments or to have engaged in any sexualized behavior. Taking the

8

evidence in the light most favorable to Grubb, her co-workers chose through their silence to side with Halavonich. None of the post-slap behavior by co-workers constituted harassment, let alone sexual harassment.

Third, although the slap incident resulted in an alteration of the terms and conditions of employment in that Grubb began working solely at the State Street campus, this was by Grubb's own choice. The fact that Mercy chose to honor Grubb's request to be separated from Halavonich cannot be turned against Mercy as evidence of a "hostile work environment." Whether Mercy's action was an appropriate response and Grubb's allegation that Mercy retaliated against her by cutting her hours are separate issues discussed below.

Mercy's Alleged Failure to Take Appropriate Corrective Action

As an alternative basis for summary judgment on Grubb's hostile work environment claim, Mercy argues that there is no basis for employer liability in this case.

An employer is not automatically responsible for sexual harassment by an employee's co-workers. However, employers

> may be liable for the sexual harassment of an employee by a co-worker or workers under a hostile environment claim where the employer knew or should have known of the charged sexual harassment and failed to take immediate and appropriate corrective action.

*Watt v. UniFirst Corp.,* 2009 ME 47 ¶ 27. In this case the slap incident was reported to Mercy the following day. Mercy then immediately called in Halavonich and took corrective action, giving Halavonich a warning that described his actions as harassment and separating Grubb from Halavonich at Grubb's request.

9

Grubb argues that there is a disputed issue for trial as to whether Mercy's corrective action was "appropriate." Given the constraints of the situation based on the undisputed facts – the fact that Halavonich was a full time employee and Grubb was a per diem employee, the fact that Halavonich was the lead certified orthopedic surgical technician and almost all of the orthopedic surgery was performed at the Fore River campus, the fact that no prior complaints had been made against Halavonich and Grubb did not want him to be fired, the fact that Grubb declined to work at the Fore River campus if Halavonich was there even though Mercy officials told her they would insure there were no further instances of harassment – the court does not find that there is a disputed issue for trial as to the appropriateness of Mercy's corrective action.

After the slap incident, there were no further instances of sexual harassment. Grubb complains that Halavonich was angry about being disciplined, that his apology was insincere, that other employees stopped talking to her, and that on the one occasion when Halavonich came to the State Street Campus, there was an uncomfortable moment when she and Halavonich saw each other and he pointed at her. However, Halavonich did not touch Grubb again, he did not make any sexual or other remarks during the State Street encounter, and there was no sexualized remarks or behavior of any kind by Halavonich or any other employees after the slap incident.

The court cannot find that Mercy's obligation to take appropriate corrective action would have required it to somehow prevent Halavonich from being angry, to exact an apology from Halavonich that Grubb would have found to be "sincere", or to somehow make other co-workers talk to Grubb. Mercy did have an obligation to prevent further sexual harassment, and no further sexual harassment occurred.

In arguing that the appropriateness of Mercy's corrective action raises a disputed issue that has to be resolved by a jury at trial, Grubb relies almost entirely on the decision of the

10

Hawaii Supreme Court in *Arquero v. Hilton Hawaiian Village LLC,* 91 P.3d 505 (2004). *Arquero,* however, is distinguishable. First, the employer in *Arquero* had the plaintiff continue working in the same restaurant with the co-worker who had sexually harassed her. Second, and most importantly, the sexual harassment in *Arquero* continued despite the action taken by the employer. *See* 91 P.3d at 515.[8]

Grubb's First Retaliation Claim

In her first amended complaint Grubb alleges that Mercy retaliated against her by cutting her hours after she had complained about the slap incident by Halavonich. To establish a claim for retaliation, a plaintiff must demonstrate (1) that she engaged in statutorily protected activity; (2) that her employer made an employment decision that adversely affected her; and (3) that there was a causal link between the protected activity and the adverse employment action. *Watt v. UniFirst Corp.,* 2009 ME 47 ¶33.

In this instance Grubb's complaint against Halavonich constituted statutorily protected activity. However, her claim of retaliation fails based on the second of the three elements listed above – because she has not offered any admissible evidence that her hours were cut or that she was otherwise subjected to adverse employment action during 2013. See discussion above at pp. 5-6 and nn. 4-7. The summary judgment rules require that assertions relied upon in opposing summary judgment must be based on admissible evidence, not characterizations purporting to summarize the contents of documents that may or may not be admissible and that are not contained in the summary judgment record. *See, e.g.,* Plaintiff's 1/16/15 Opp. SMF ¶¶ 51, 54-55,

---

[8] In *Arquero* the Hawaii Supreme Court also acknowledged that there are differences between Hawaii law and federal law with respect to employer liability on hostile work environment claims. 91 P.3d at 513. Maine courts, in contrast, consistently look to federal cases interpreting Title VII in construing the Maine Human Rights Act. *E.g., Tomer v. Maine Human Rights Commission,* 2008 ME 190 ¶ 13, 962 A.2d 335.

58-59, 61-63, 65, 67, 73, 88-89. Crucially, plaintiff has failed to adequately controvert paragraphs 88 and 89 of Mercy's 12/19/14 SMF.

Grubb also argues that she was subjected to adverse action by being sent to the State Street campus, but that inevitably resulted from (1) her own insistence that she could not work in the same location as Halavonich and (2) the undisputed facts that Halavonich was the lead full time certified orthopedic surgical technician and that almost all of Mercy's orthopedic surgery was conducted at the Fore River campus.

Grubb contends that she was subject to retaliation in other respects but the summary judgment record does not demonstrate that there are disputed issues for trial on these issues. For example, while she claims that her locker was moved into the bathroom, she acknowledged that there are many other employees who have lockers in the bathroom including employees who are "higher up the totem pole." *See* Plaintiff's 1/16/14 SMF ¶ 55; Grubb Dep. 81-82, 86. Similarly, while she complains that Tardif scheduled her for days when she was in school, she acknowledged that she attended school on those days without repercussions. Grubb Dep. 75.[9]

As a result, Grubb has failed to demonstrate – with respect to her retaliation claim based on the 2013 time period after the slap incident – that there is a disputed issue for trial as to whether she was subjected to adverse employment action by Mercy.

Grubb's Second Retaliation Claim

As noted above, while Mercy's first summary judgment motion was pending, Grubb filed a second amended complaint that alleged she had been the subject of retaliation for her complaint against Halavonich because she had applied and was not selected for a full time

---

[9] Grubb also contends that after the slap incident her supervisor, Susan Tardif, was cold to her and acted in an intimidating fashion toward her. Taking these subjective complaints in the light most favorable to Grubb, they do not constitute the kind of adverse employment action that can support a retaliation claim.

surgical assistant position in December 2014. Mercy's second summary judgment motion is addressed to Grubb's December 2014 retaliation claim.

With respect to Mercy's failure to hire her for a full time position, Grubb has met the first element of a retaliation claim because her complaint about the Halavonich slap incident – which by then had ripened into a lawsuit – constituted protected activity. Moreover, on this claim it is undisputed that Grubb was the subject of an adverse employment decision because she was not offered a full time job.

Mercy's second summary judgment motion therefore depends on whether Grubb has offered evidence demonstrating that there is a disputed issue for trial with respect to the existence of a causal link between her sexual harassment complaint and lawsuit and her failure to get the permanent job for which she applied. In this connection Grubb is only required to demonstrate that there is a factual dispute whether her sexual harassment complaint was a substantial or motivating factor in Mercy's decision, even if it was not the only reason. *Walsh v. Town of Millinocket,* 2011 ME 99 ¶¶ 24-25, 28 A.3d 620.

One way that an employee can demonstrate the existence of a factual dispute for trial is by demonstrating that the non-discriminatory reasons given by an employer for its employment decision were either untrue or were not the actual basis for the employer's decision. *Daniels v. Narraguagus Bay Health Care Facility,* 2012 ME 80 ¶ 15, 45 A.3d 722. In this case Mercy advised Grubb that there were three reasons for the decision not to hire her for the full time position: (1) that Grubb intended to go back to school in September 2015 and therefore would not be available for full time work after that date; (2) that full time surgical assistants were required to work both at the Fore River and State Street campuses and Grubb was unwilling to work at Fore River while Halavonich was there, and (3) that Lisa Gagnon, who had been

13

supervising Grubb as a per diem surgical assistant, had concerns about Grubb's performance. Defendant's Statement of Material Facts dated April 8, 2015 ("Mercy 4/8/15 SMF") ¶¶ 24, 25, 27.

In response Grubb first disputes Mercy's claim that there were valid concerns about her performance. Grubb May 1, 2015 Affidavit ¶ 3. She has offered evidence that her January 2015 performance evaluation rated her as "Meets expectations." Plaintiff's Statement of Material Facts dated May 1, 2015 ("Plaintiff's 5/1/15 SMF") ¶ 84 (admitted). Grubb has also offered evidence that there was no difference between the work performed by a per diem surgical assistant and a full time surgical assistant. Plaintiff's 5/1/15 SMF ¶ 51, citing March 2015 Cote Dep. 5.

Gagnon, Grubb's supervisor, testified that Grubb was qualified for the job as a surgical assistant. Plaintiff's 5/1/15 SMF ¶ 81. Finally, Grubb has also offered evidence that the persons ultimately hired were less experienced than she was. Plaintiff's 5/1/15 SMF ¶¶ 87-88. This is sufficient to raise a disputed issue of fact as to whether Grubb's job performance or qualifications were a legitimate reason not to hire her for a full time position.

Grubb has not offered any substantive evidence to controvert Mercy's other two reasons for not hiring her – her likely unavailability for full time work after September and her unwillingness to work at the Fore River campus as long as Halavonich was there. However, in a labor market where some full time employees leave jobs after relatively short periods, Grubb questions whether her unavailability for full time work after September 2015 should have been a disqualifier. Grubb also has offered evidence suggesting that she was discouraged from even applying for the job. Plaintiff's 5/1/15 SMF ¶¶ 53-54. While Mercy's strongest argument appears to be that it needed full time surgical assistants to work at both campuses, there is no evidence that Mercy ever told Grubb that it would consider her for a full time job if she would be willing

14

to consider working at the Fore River campus and measures were taken to address Grubb's concerns about Halavonich.

Other than her evidence controverting Mercy's evidence of work deficiencies, Grubb primarily argues inferences and credibility. She points out that this lawsuit was pending at the time Mercy declined to hire her for the full time position and that her counsel had taken the deposition of one of the Mercy decision makers two months before, and she suggests that she is entitled to explore at trial whether this influenced Mercy's decision. She argues that the credibility of Mercy's explanations for its failure to hire her is a disputed issue for trial.[10]

Based on Grubb's evidence controverting Mercy's statements about her job performance, the pendency of the lawsuit, the evidence suggesting that Mercy discouraged Grubb from even applying, and the fact that Mercy hired persons with less experience, the court concludes that there is a disputed issue of fact as to whether there was a causal connection between protected activity and the December 2014 hiring decision and will therefore deny Mercy's second motion for summary judgment.

The entry shall be:

1. Defendant's first motion for summary judgment is granted with respect to the claims in the first amended complaint alleging hostile work environment and retaliation during 2013.

---

[10] Grubb has also offered a declaration from her counsel which states that the first amended complaint contains what counsel refers to as "accusations" against Mercy Human Resources administrator Emily Cote, that Ms. Cote's deposition was taken on October 22, 2014, and that plaintiff's memoranda opposing summary judgment contend that Cote's affidavits contain inaccurate or untruthful information. Loranger Declaration ¶¶ 2-3. A review of plaintiff's memoranda does not reveal any challenges to Ms. Cote's credibility in particular, and it is unclear what purpose is served by counsel's declaration. To the extent that it repeats arguments made in plaintiff's opposing memoranda, it is superfluous. To the extent that it is intended to implicitly offer counsel's opinion of Ms. Cote's credibility, it is both inadmissible and improper. See M. R. Prof. Conduct 3.4(e).

2. Defendant's second motion for summary judgment is denied as to plaintiff's additional claim of retaliation in her second amended complaint based on defendant's failure to hire plaintiff for a full time position in December 2014.

3. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June 22, 2015

Thomas D. Warren
Justice, Superior Court

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

KATHARINE RAND ESQ          Defendant's Counsel
PIERCE ATWOOD
254 COMMERCIAL STREET
PORTLAND ME 04101

---

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

GUY LORANGER ESQ            Plaintiff's Counsel
LAW OFFICE OF GUY LORANGER
ONE GRANNY SMITH COURT SUITE 3
OLD ORCHARD BEACH ME 04064